May it please the court, Tony Balkasoon on behalf of the Plaintiff Appellate Billy May. Can I pull the mic closer to you? Just lift the mic itself. There you are. My name is Tony Balkasoon on behalf of the Plaintiff Billy May. This case was decided at summary judgment on the grounds of the affirmative defense of administrative exhaustion under the Prison Litigation Reform Act. This court should reverse because the PLRA only applies to suits by prisoners and at the relevant time Mr. May was not a prisoner. But he was a prisoner when the case was filed? That's correct, your honor. That's one of the points. And the claims that are now at issue in his, it's his second amended complaint? That's correct. The first was technical. So the claim that is, I think there's just one that's at issue? That's correct. And it's the same claim that was at issue in the original complaint? I disagree with that, your honor. It is not. The defendant that's before the court today is Mr. Segovia. The first time Mr. May ever sued Mr. Segovia was in that second amended complaint. And as you know, under the Relation Back Doctrine, a new defendant, Relation Back never applies to a brand new defendant. And what was the claim against Mr. Segovia? It was due process for sending him to solitary confinement indefinitely for not taking a drug. And did he raise a due process for being sent to solitary confinement in his first complaint? Mr. May sued a different defendant, also under a general theory of due process, but not Mr. Segovia. Mr. Segovia's response to that is first to claim Relation Back, but that doesn't apply with a brand new defendant. And second is to say in a footnote that, well, that new defendant rule doesn't apply to federal officers, but Mr. Segovia is not a federal officer. That's a defined term. It applies to somebody nominated by the president or a secretary or a court. There's a different definition for federal employees. So it was a brand new claim against Mr. Segovia. But even going back before that, your honor, there are four important points of agreement. The first is that Mr. May was not a prisoner when the operative complaint was filed. The second is that if he had waited until release to file any complaint, the PLRA would not have applied and the parties would never have litigated exhaustion. And could he, after he was released, filed the same claim, excuse me, and it would have been timely? That's correct, your honor. He had time under the statute of limitations. And that's our third point of agreement. So he could have avoided the problem, just refile. You are correct that the parties agree if he had dismissed and refiled, the PLRA would not have applied. And no matter whether there were any sunk costs up to that point, the parties would not have continued litigating exhaustion. Why doesn't that reinforce the notion that there's no reason for us not to enforce the nexus between being a prisoner and a lawsuit that the PLRA cares about? I mean, they care about the notion that you're a prisoner, you file a suit, and when you file that suit, then you have to have exhausted before you do that. That is a congressional policy. Particularly if you're in a situation where there would have been no prejudice to your client at all in dismissing the current suit and refiling, why in the world should that we should even consider some other policy-based reason to make a difference? Your Honor, our argument is not that this court should impose a different policy rule. Our argument is that the text of the PLRA says to apply the ordinary rules of civil procedure, and we're getting that from Jones. So in Jones, the defendant there looked at the exact same text as in this case, no action shall be brought, and just placed undue weight on that. The defendant said the word brought must be very important, so we have to look at the very first thing a prisoner filed, and that's how you know they have to plead exhaustion of the complaint. The defendant also said the word action must be very important, and that's why if a plaintiff brings exhausted and unexhausted claims of the same complaint, the whole thing's got to go because there's just one action. But the Supreme Court rejected both of those rules. It said the text, no action shall be brought until exhaustion, was pure boilerplate. It did that in a different context than the context that we have here, right? I'm not sure that's correct, Your Honor, especially if the total- Well, they were looking at who had the burden. Is it an affirmative defense or not? Isn't that the question that was in Jones? There were actually three questions in Jones, and the Supreme Court rejected the Sixth Circuit's rule on all three. Yeah, there were three questions. None of them are the question that is presented here. I'm not sure that's correct, Your Honor. In the total exhaustion part of Jones, for example, the defendant relied on that text, no action shall be brought before exhaustion, and said, well, that means if you've got unexhausted claims and exhausted claims, there's just one action and you brought them, so the whole suit's got to go. And the Supreme Court said, no, that the words no action shall be brought are boilerplate, and ordinarily, we assess claims individually. Is there a total exhaustion issue here? There is not, Your Honor, but I would like to point the Court to its prior decision in the Kikimura case, which we cited on page 10 of our opening brief. There, this Court already confronted and specifically rejected any requirement that a plaintiff dismiss and refile. This Court had previously applied the total exhaustion rule, and Kikimura said we did that for policy reasons, not textual reasons. The idea was that a plaintiff should not have to go exhaust his unexhausted claims and then file a second suit, because two suits is not good. We'd rather have one. But the Kikimura Court said, well, in a case where the plaintiff brings both exhausted and unexhausted claims, but the unexhausted claims become forever barred because they're untimely, the Court asked for supplemental briefing. Should we apply our total exhaustion rule? And it answered that question, no. It said all that would do is cause the plaintiff to dismiss and refile. And the Court's words, it said, we should not create an additional procedural technicality that would be inappropriate, because these plaintiffs are often prosaic. And that's very congruent with Jones. I'm not questioning that, but we don't have a total exhaustion case here. And the question here, to your point, is what the text of the statute requires. We're not talking about adding on anything, necessarily. But the position would be that the text requires exactly that, that we enforce that, we enforce exhaustion. And if your client wanted to get out of that, he needed to dismiss and refile. That's the point. I would agree with your Honor, if our client had never amended his complaint. So it's not our position that if you file while in prison, and then get out, that that springs into life on its own accord. And Congress, as you're right, was concerned about prisoner lawsuits. And they said, when you're in prison, you've got very low opportunity costs. Those opportunity costs go back to normal once you're out. A prisoner who refiles, who seeks leave and is granted leave to amend, and amends his complaint once he's out, that is not a low cost, a low opportunity cost lawsuit. That is a prisoner who's bringing his lawsuit, continuously pursuing his lawsuit, asking the court for leave, and getting leave to bring that lawsuit when his opportunity costs are the same as any other person. So I would agree with you had he not. What do you mean by opportunity costs? Are you talking about cost of hiring counsel? No, Your Honor. What I'm referring to is Congress was saying there was this overwhelming number of prisoner lawsuits filed by people in prison. It was burdening the federal courts. You bet. And the idea is that while they're in prison, they don't have a lot else to do. Once you leave prison, and you seek leave to amend, and you're granted leave to amend, you've filed a new lawsuit. You've brought a new action. And you're now in federal court. Your opportunity costs are the same as anywhere else. And that's why Congress drew a bright line between prisoners and non-prisoners in the PLRA. Here, though, your hypothetical you just used was you get out of prison and then you file a motion to amend your complaint. That's not what happened here. He filed his motion to amend before he was out of prison. And in the Ninth Circuit cases, Rhodes v. Robinson, that makes a difference. They look at the time of filing the motion to amend in the Ninth Circuit, right? So your honor, it's correct. If the court agrees that the ordinary rules of federal civil procedure apply, and it's the operative complaint that controls, the defendant has a fallback position that we should look at when the complaint was submitted, not when it was filed. That runs counter to this court's opinion in Murray v. Arcombo, which says when you need leave to file, if you file a complaint, it has zero legal effect until you're granted that leave to file. So you want us to adopt the Ninth Circuit rule except for not with respect to when it kicks in? The Ninth Circuit rule in Jackson v. Fong, I think, is the case to apply this after Jones. They did mention that it was Rule 15d and not 15a, but they never explained why that made a difference. The Sixth Circuit in Maddox said it's the same analysis under both. So are you relying on Jackson v. Fong or not? Yes, I think Jackson v. Fong is the only circuit to address this issue after Jones. I think the point that Judge McHugh is making is embedded in Jackson v. Fong is Reed v. Robinson. Reed holds that when you tender the complaint, that is the operative point for determining the activity, the action of exhaustion. It's determined at the point you tender, and at the point that your client tendered, your client was in prison. Your Honor, the cases from the Seventh and Ninth Circuit that talk about submission versus filing, those arise at a very different context. Importantly, those are the original complaint. It was cited by Jackson, and exactly in this context in which Jackson said, citing to Reed, that the time that you judge it is, and I looked at Jackson this morning again, and so it's at the time that you file. I mean, submit, not when the court acts on it, when you submit. And when your client submitted here, he was in prison. Where that issue was decided, so the case in which that was a holding, because it was relevant to the case, those cases from the Seventh and Ninth Circuit arise for an original complaint. The only reason it was submitted and not filed is that it was with the original complaint in a form of papyrus petition. So that was still the only complaint of the case. It did have legal effect. You did not need leave to amend. And this Court has held in Murray v. Arcabo, when you Murray, you're saying we decided the issue there? That was a case in which, it was not in this case, that was a case in which someone filed an amended complaint without leave of court, and the court said that has no legal effect. The defendants tried to take advantage of that, saying it gives us a chance to file a new motion to dismiss, and the court said, no, you needed leave, you didn't get leave, and so that complaint is a complete nullity. It's like it never happened. The same is true here. Mr. May needed leave to amend. He sought it, he was granted it, and his complaint was filed after he was released from prison. Go ahead, please. In the California, if you look at the Ninth Circuit case, Fong, it's a supplemental complaint, meaning that the allegations that are the basis of the amendment arose after the first complaint was filed. So you couldn't exhaust as to those at the time the first complaint was filed. That's not what we have here. What we have here is essentially the same allegations, but you've added a different party to the complaint, and it was tendered while he was still in prison. Do you think it makes a difference that we're not dealing with a supplemental complaint here? I don't, Your Honor. Let me say, for both the supplemental complaint and submission versus filing, an important point is even if that weren't important to the court, if the court disagrees with me and that's important, the right result is not affirming. Those issues were not important to the district court. So our client should be given the chance to cure that defect. That's a curable defect. If we thought it's the submission date and not the filing date, the district court did not think that. It relied on the filing of the operative complaint and would have allowed Mr. May a chance to file a new complaint. And the fact of his release is a supplemental fact that he could file. I think those Ninth Circuit cases turning on a supplemental complaint liberally read the pro se plaintiff's complaint. Here our client told the judge, I'm getting out at a certain date. And as soon as he was out, told the judge, I'm out. Here's my change of address. The district court was well aware that he had been released and it took that into account. So I think liberally reading it could be a supplemental complaint, as the Ninth Circuit did, or the district court should give him leave to amend. Well, in the Jackson v. Fong case, don't you also have a tricky little problem of you have unexhausted and exhausted claims? And there were exhausted claims and then there's the case that was concerning for the Ninth Circuit. And they were trying to bring them all in and say, okay, that's fine. You don't need to, we're not going to bar this because it's not exhausted. I think the upshot of the opinion, Your Honor, as the way it distinguished all the cases that my friend relies on, the primary way was that they all predated Jones. And the upshot is after Jones, the question is, what does the operative, what do the ordinary rules of civil procedure say? The ordinary rules say we look to an operative complaint, not one that's been rendered a nullity for claims and defenses. We wouldn't look, if the operative complaint didn't complain about prison conditions, the PLRA wouldn't apply. We wouldn't look at a prior complaint to see if it did. And if the operative complaint is not brought by a prisoner, the PLRA doesn't apply. But when the original complaint is the same claim, has a claim that's the same as the original complaint, the original complaint's not a nullity for all purposes. We certainly look to it to relate back to see if you've met your statute of limitations obligation. So, you know, it's not that the federal rules don't recognize a difference between a claim that has already been asserted and is simply being asserted again in an amended complaint with new claims. May I answer the question, Your Honor? Go ahead, please. You are correct that relation back does apply. The defendant has never pointed to relation back applying in any context to deprive the plaintiff. It's always remedial because the defendant had notice of the claims. And on that issue, I think the Eighth Circuit's case of the Westinghouse case we cited is the most instructive. There, it applied relation back for statute of limitations purposes, but specifically did not apply it to take the operative complaint back in time to a time before exhaustion had happened. And that's the same approach this court should reach because it's never been used in a way to deprive the plaintiff of a meritorious claim. Thank you. Good morning, and may it please the court. I'm Carl Schock, representing the appellee Juan Segovia. As the court has noted, there are two alternative ways for this court to conclude that the PLRA exhaustion requirement applies here. First, because the plaintiff was a prisoner when he filed his original complaint. And second, because even if the second amended complaint brought a new action, the plaintiff brought that action when he submitted the second amended complaint to the court with his motion for leave to amend. I'm going to start with the first issue, but I did want to highlight that alternative rationale as well and hope to return to it. The PLRA says, as this court has interpreted in Norton, that it's the plaintiff's status at the time he files suit that determines whether the exhaustion provision applies. And so that means that if a plaintiff is a prisoner when the lawsuit is filed, the exhaustion requirement applies and continues to apply even if the rule that the plaintiff advocates here would effectively do away with that rule by allowing a plaintiff in that situation who has filed in violation of the exhaustion provision simply to amend his complaint afterwards, noting the fact of his release. And that shouldn't be permitted. On the issue of whether this is the same claim, I want to address a point that the appellant ended the argument on, about whether the relation back doctrine has been applied outside the context of the statute of limitations. And in fact, it has in a case that was cited in their reply brief, which is the prime care case. And that was a case dealing with when an action was brought for purposes of the Class Action Fairness Act. And the court looked at that point and it said, if in that case the plaintiff had brought in action before the effective date, then had amended the complaint to assert a claim against a new defendant after the effective date. And the court's holding there was that if the claim against the new defendant relates back to the filing of the original complaint, it does not bring a new action. And the claim here relates back under Rule 15C1C, which is the rule that allows a claim against a new defendant to relate back if that defendant had notice of the action and knew that the claim should have been against him. Here this defendant, Juan Segovia, submitted an affidavit in support of the defendant's summary judgment response at the very beginning of the lawsuit saying, I was the one who made the decision to put the defendant in the special housing unit. And in fact, that affidavit was the basis for the, ultimately for the plaintiff's amended complaint. So this claim would relate back and therefore it should be deemed to be brought at the time of that original action. In addition, one second point on that is that one thing that Jones does make clear is that the exhaustion requirement is concerned with the substance of the claim and not with the the fact that this is the same claim. It is substantively the exact same claim. There are some additional details that were added. But if you compare the second amended complaint to the first amended complaint or the original complaint, those two are the same. If you compare them, they're essentially the same with simply some additional details. There also is no conflict with the federal rules here. The federal rules do in fact say that the allegations in an amended complaint supersede those in the first. But that doesn't answer the question here because we do look to those allegations, but the question is still what was the plaintiff's status at the time that the lawsuit was filed? And so it's similar to the way that this court dealt with standing in the Southern Utah Wilderness case that I cited in my brief, which is the court said standing is determined at the time that the lawsuit is filed. In answering that question, we do in fact look to the allegations in the second amended complaint, but that doesn't change what the operative question is. And the operative question is still what was the plaintiff's status when the lawsuit was filed? When you say lawsuit, you mean the claim, right? I mean, in Jones, it seems as if the court instructed that we should not look at it as the action, but rather look at, break it down claim by claim. I wouldn't concede that, although I'd say it doesn't matter because it is the same claim. But the reason I wouldn't concede that is that Jones was dealing with a different situation where the PLRA indisputably applied and the question was, and some claims were properly exhausted. Here, no claims were properly exhausted. And so this action was subject to dismissal from the very beginning. If, for example, this dismissal issue or this while the plaintiff was still a prisoner, which by the way was two or three years, if it had been resolved during that time, it undoubtedly would have been subject to dismissal. In addition, if the court had granted the motion to amend in the first five months after that was filed, it undoubtedly would have applied. And so the exhaustion requirement is concerned with what the plaintiff does. It says no action may be brought by a plaintiff. And so it doesn't make sense for that exhaustion requirement to turn on things that are outside of the plaintiff's control, things that aren't in existence at the time he files and solely turn on when the district court makes a decision. You just said that he had two to three years to exhaust. Is that right? No. What I said is from the time that he filed his lawsuit until the time that he was released, there was, that was a couple years. And so my point is, if the exhaustion issue had been resolved any time during those first two years, we wouldn't be here. There would be no question that the PLRA applied. You started to in some ways segue into your second point, and I understood from opposing counsel that we have spoken to that issue and decided that issue of when you file that it has no operative effect. I didn't think we had resolved that question. No. I think that the case that Appellant is referring to, at least as I understand it, is a general statement of the fact that a amended complaint is not legally effective until the court grants the motion to amend. Right. And that's not new. But that's a separate issue. I mean, it is true that perhaps that claim is not legally effective in terms of those claims aren't actually officially in the lawsuit. Those allegations are not the ones that are superseding the earlier allegations. Correct. But that shouldn't change the question of when the action is brought by the plaintiff. And the Seventh and Ninth Circuit cases, the cases that the court was addressing are actually cases a few lines down that have cited the cases back, but the original cases are cited in my brief, and it's Ford v. Johnson in the Seventh Circuit and Vaden v. Summerhill in the Ninth Circuit. And both of those cases say, and it is true it was a different context, it was the question of a plaintiff submits a claim and then the court has to screen it and then accept it for filing. But both of those cases, the court held that the action was brought when the plaintiff submitted the complaint to the court, not when the court subsequently accepted it for filing. And that makes sense because the language of the PLRA, again, talks about when the action is brought by the plaintiff. So it's focused on the action by the plaintiff. And it doesn't make sense to say that the action is brought by the plaintiff six months later simply because that's when the court chooses to grant the motion to amend. It's also consistent with the purpose of the exhaustion requirement, which is to allow the parties to try to resolve the dispute before legal action is initiated. Certainly once the complaint is submitted to the court, any chance of resolving it through the exhaustion, if it's not gone, it's certainly severely affected. And so it makes sense that we should look to when that exhaustion requirement can still serve its purpose. And then I just also want to mention on this point, there is on this exact point here of which complaint controls the timing. There, of course, is a circuit split with the Ninth Circuit on the other side, but the clear majority of courts come out the way that the defendant is asking the court to come out here. The Eleventh Circuit has addressed it most extensively in Harris, and that was dealing with a slightly different provision. It was dealing with the provision of the PLRA that prohibits bringing a claim for mental injury, but the analysis is still the same. And it's a very extensive analysis that addresses really all of the points that the plaintiff is making here. And then the Third Circuit has twice reached the same conclusion, as well as a couple other circuits that are cited in our briefs. And then this court, in fact, in an unpublished opinion, although not addressing this case or this particular issue in depth, it actually held that the PLRA exhaustion requirement turned on the timing of the original complaint in West v. Ortiz, and that case actually came after Jones. So again, it wasn't fully addressed in that case, but certainly the holding of that case is consistent with the government's position here. So unless the court has any further questions, I think the fundamental point here is that when the plaintiff filed the lawsuit, that lawsuit was filed in violation of the PLRA exhaustion requirement, and so it was deficient from the outset. And it should not have then been able to be revived by an amendment, particularly where that amendment asserted the same substantive claim that was in the original. Well, if, say, the petitioner plaintiff here files an action, it is unexhausted at the time of filing. He can later exhaust, can he not? Actually, there's no published case law from this court on that point, but an unpublished case says no. It's Rupert v. Aragon, I think, is the case. So we're back to reading that no action shall be filed very strictly then. I think that's consistent with how this court does it, and that's consistent with how other courts do it. And that makes sense because it's not that we're trying to get rid of plaintiff's lawsuits. What we're trying to do is we're trying to encourage exhaustion. And so if a plaintiff is going to file a lawsuit while he's a prisoner, we want him to take it, the Congress wants him to take advantage of the exhaustion procedures that are in place to avoid unnecessary lawsuits.